# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| AMGEN INC. & | ) | |
| AMGEN MANUFACTURING | ) | Civil Action No.  25-cv-11867 |
| LIMITED LLC, | ) | |
| | ) | **COMPLAINT** |
| | ) | **& DEMAND FOR A JURY TRAIL** |
| Plaintiffs, | ) | |
| | ) | **Redacted Version** |
| v. | ) | |
| | ) | |
| BIOCON BIOLOGICS, INC., | ) | |
| BIOCON BIOLOGICS UK LIMITED, & | ) | |
| BIOCON BIOLOGICS LIMITED, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Amgen Inc. and Amgen Manufacturing Limited LLC (together "Amgen" or "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendants Biocon Biologics, Inc., Biocon Biologics UK Limited, and Biocon Biologics Limited (together "Biocon" or "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.       This is an action for patent infringement arising under the laws of the United States, Title 35 United States Code §§ 1, *et seq.*, including 35 U.S.C. § 271(e)(2)(C), which was enacted in 2010 as part of the Biologics Price Competition and Innovation Act ("the BPCIA"), Pub. L. No. 111-148, §§ 7001–03, 124 Stat. 119, 804–21 (2010), including 42 U.S.C. § 262(*l*), and the Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201–02.

2.       The BPCIA created an abbreviated pathway for the approval of biosimilar versions of approved biologic drugs. 42 U.S.C. § 262(k). This abbreviated pathway allows a

biosimilar applicant, such as Biocon, to rely on the prior licensure and approval status of the innovative biologic products that the biosimilar seeks to replicate.

3.    This action arises out of Defendants' submission of abbreviated Biologic License Application ("BLA") No. ████ to the U.S. Food and Drug Administration ("FDA") on or around ████████████, pursuant to 42 U.S.C. § 262(k), seeking approval to manufacture and sell biosimilar versions of Amgen's Prolia® and XGEVA® drug products. This action further arises from Defendants' imminent and actual import, and imminent commercial manufacture, offer for sale, and sale of that proposed biosimilar product.

4.    Prolia is prescribed to treat patients with a high risk of bone fracture in certain settings, such as patients suffering from osteoporosis. XGEVA is prescribed to prevent skeletal-related events (*e.g.*, fractures or spinal cord compression) in cancer patients whose cancer has spread to the bone, as well as to treat certain types of tumors. The active ingredient in these two drugs is an antibody called denosumab. Amgen's scientists and clinicians have spent decades elucidating the biology of bone remodeling, creating the denosumab antibody, and developing Prolia and XGEVA. Amgen's innovative work on Prolia and XGEVA has benefited a tremendous number of patients. To support its portfolio of complex biological products such as Prolia and XGEVA, Amgen scientists have also made significant advancements in manufacturing processes that enhance product yield, consistency, and quality.

5.    The asserted patents in this action cover the denosumab antibody and pharmaceutical compositions comprising denosumab (the active ingredient in Prolia and XGEVA), innovative methods of manufacturing therapeutic proteins, like denosumab, and denosumab products. The asserted patents (collectively, "the Patents-in-Suit") are as follows: U.S. Patent Nos. 7,364,736 (the "Boyle '736 Patent"); 7,888,101 (the "Crowell '101 Patent");

7,928,205 (the "Dillon '205 Patent"); 8,053,236 (the "Morris '236 Patent"); 8,058,418 (the

"Boyle '418 Patent"); 8,247,210 (the "Crowell '210 Patent"); 8,460,896 (the "Crowell '896

Patent"); 8,680,248 (the "Crowell '248 Patent"); 9,012,178 (the "Kang '178 Patent"); 9,228,168

(the "Morris '168 Patent"); 9,328,134 (the "Allen '134 Patent"); 9,359,435 (the "Wu '435

Patent"); 10,106,829 (the "Gupta '829 Patent"); 10,167,492 ((the Leiske '492 Patent");

10,227,627 (the "Gupta '627 Patent"); 10,513,723 (the "Kang '723 Patent"); 10,583,397 (the

"Gefroh '397 Patent"); 10,655,156 (the "Gupta '156 Patent"); 10,822,630 (the "Leiske '630

Patent"); 10,894,972 (the "Huang '972 Patent"); 10,907,186 (the "Gupta '186 Patent");

11,077,404 (the "Gefroh '404 Patent"); 11,098,079 (the "Hoang '079 Patent"); 11,130,980 (the

"Pande '980 Patent"); 11,192,919 (the "Trejo '919 Patent"); 11,254,963 (the "Kang '963

Patent"); 11,299,760 (the "Pande '760 Patent"); 11,319,568 (the "Wu '568 Patent"); 11,434,514

(the "Huang '514 Patent"); 11,459,595 (the "Wu '595 Patent"); 11,492,372 (the "Trejo '372

Patent"); 11,946,085 (the "Huang '085 Patent"); 11,952,605 (the "Wu '605 Patent"); 12,084,686

(the "Crowell '686 Patent").



6.     On ▮▮▮▮▮▮▮▮, Defendants contacted Amgen's counsel to ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ The next day, Defendants informed Amgen of their plan "▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and requesting "▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

7.     On December 5, 2024, Defendants informed Amgen that ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████ Defendants' BLA indicates

Defendants are seeking approval to manufacture and sell biosimilar versions of Amgen's Prolia

and XGEVA denosumab drug products, designated "Bmab 1000."

8.    Upon reviewing Defendants' document production from ██████████████,

Amgen determined that Defendants had not fully complied with the requirements set out in

§ 262(*l*)(2)(A) of the BPCIA, which requires disclosure of not only a copy of the BLA itself, but

*also* "such other information that describes the process or processes used to manufacture the

biological product that is the subject of such application." 42 U.S.C. § 262(*l*)(2)(A). Such

information is critical for Amgen to achieve a fuller understanding of Defendants' manufacturing

process, which is necessary for Amgen to participate in the pre-litigation exchange and

negotiation contemplated by the BPCIA.

9.    Since receiving the initial BLA production, Amgen has diligently evaluated the

produced documents and repeatedly requested that Defendants correct or supplement their

deficient production. First on ██████████████, and again on ██████████████ and ██████████

██████, Amgen informed Defendants of certain deficiencies in the production pertaining to the

process used to manufacture Bmab 1000.

10.    Defendants refused to supplement their production in response to Amgen's

letters, and thus, the materials produced to Amgen remain deficient.

11.    Amgen has participated in the pre-litigation exchange contemplated under the

BPCIA to the best of its ability. Amgen's efforts, however, have been frustrated by Defendants'

initial and ongoing failure to comply with section 262(*l*)(2)(A) of the BPCIA, which states that a

biosimilar applicant "shall provide" to the reference product sponsor both: "a copy of the

application submitted to the Secretary under subsection (k)," and "such other information that

describes the process or processes used to manufacture the biological product that is the subject of such application." 42 U.S.C. § 262(*l*)(2)(A). Defendants have declined to resolve the deficiencies identified in Amgen's multiple letters.

12.    Defendants' failure to produce the required information under section 262(*l*)(2)(A) has prejudiced and will continue to prejudice Amgen's efforts to conduct a complete patent infringement analysis under the BPCIA. After conducting an analysis to the best of its ability based on the limited information available, on ███████████, Amgen provided to Defendants a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Biocon provided on ███████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen. Despite producing this list of patents, Amgen informed Defendants that they had not complied with section 262(*l*)(2)(A), and that, accordingly, Amgen had no obligation to provide a patent list under section 262(*l*)(3)(A).

13.    On ███████████, Defendants tendered to Amgen a purported "statement" in response to Amgen's list of patents. This statement did not provide additional information necessary for Amgen to verify Defendants' claims.

14.    ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████

15.    As alleged herein, Defendants' failure to comply with section 262(*l*)(2)(A) authorizes Amgen to file a suit for a declaration of infringement. 42 U.S.C. § 262(*l*)(9)(C); *see also Sandoz v. Amgen*, 582 U.S. 1, 2–3 (2017) ("§ 262(*l*)(9)(C) provides a remedy for an

applicant's failure to turn over its application and manufacturing information" by authorizing the sponsor "to bring an immediate declaratory-judgment action for artificial infringement.").

16. ███████████████████████████████████████████████

████████████████████████████████████████████

███████████

17.     On information and belief—including based on the information available in Defendants' BLA and documents produced thus far—Defendants have infringed or will imminently infringe the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(C), as evidenced by Defendants' submitting a BLA seeking the FDA's approval under 42 U.S.C. § 262(k) to engage in the commercial importation, manufacture, use, sale, or offer for sale of their denosumab biosimilar products before the expiration of the Patents-in-Suit.

18.     As further alleged herein, on information and belief, Defendants have infringed or will imminently infringe one or more claims of the Patents-in-Suit under at least 35 U.S.C. § 271(a), (b), and/or (g) by making, using, offering for sale, or selling within the United States, or importing into the United States, one or more of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit.

## THE PARTIES

### A.    Plaintiffs

19.     Amgen Inc. is the sponsor of the reference products, Prolia and XGEVA, which the FDA has approved for a number of different therapeutic uses (termed "indications"). Amgen Inc. is the owner of all rights, title, and interest in each of the Patents-in-Suit. Amgen Manufacturing Limited LLC is the exclusive licensee of the Patents-in-Suit in the United States and its territories for commercialization of Prolia and XGEVA.

20.     Amgen Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Amgen Center Drive, Thousand Oaks, California 91320.

21.     Amgen Manufacturing Limited LLC ("AML") is a corporation existing under the laws of the Commonwealth of Puerto Rico, with its principal place of business at Road 31 km 24.6, Juncos, Puerto Rico 00777. AML is a wholly owned subsidiary of Amgen Inc.

22.     Amgen is one of the world's leading biopharmaceutical companies and is dedicated to using discoveries in human biology to invent, develop, manufacture, and sell innovative therapeutic products based on advances in molecular biology, recombinant DNA technology, and chemistry for the benefit of patients suffering from serious illness. To that end, Amgen has invested billions of dollars into its research and development efforts. The two denosumab biological drug products that Defendants now seek to copy, Prolia and XGEVA, are the result of Amgen's innovations. Amgen brings this action to redress and halt the Defendants' actual and intended infringement of the Patents-in-Suit.

### B.     <u>Defendants</u>

23.     Biocon Biologics Inc. is a domestic corporation organized and existing under the laws of Delaware, with, on information and belief, its principal place of business at 245 Main St, 2nd floor, Cambridge, Massachusetts 02142.

24.     Biocon Biologics UK Limited is a foreign corporation organized and existing under the laws of the United Kingdom, with, on information and belief, its principal place of

business at 16 Great Queen Street, Covent Garden, London, United Kingdom, WC2B 5AH. Biocon Biologics Inc. is a wholly-owned subsidiary of Biocon Biologics UK Limited.[1]

25.    Biocon Biologics Limited is a foreign corporation organized and existing under the laws of India, with, on information and belief, its principal place of business at Biocon House, Semicon Park Electronics City, Phase – II, Hosur Road Bengaluru 560100, Karnataka, India. On information and belief, Biocon Biologics UK Limited is a wholly-owned subsidiary of Biocon Biologics Limited.[2]

26.    Biocon Biologics Inc. is named as ██████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████

27.    ████████████████████████████████████████ ██████████████████████████████████████████

28.    On information and belief, Biocon Biologics, Inc., acting in concert with Biocon Biologics UK Limited and Biocon Biologics Limited, is in the business of developing, manufacturing, and seeking regulatory approval for developing, manufacturing, importing, marketing, distributing, using, offering to sell, and/or selling biopharmaceutical products (including products intended to be sold as biosimilar versions of successful biopharmaceutical products developed by others) in Massachusetts and throughout the United States, through its own actions and through the actions of its agents.

---

[1] Biocon Biologics, *Biocon Biologics Integrated Annual Report 2023-24* at 108–09, https://www. bioconbiologics.com/docs/Biocon_Biologics_Integrated_Annual_Report_2024.pdf (last accessed June 20, 2025).

[2] *Id*. at 108.

29.     On information and belief, Biocon Biologics, Inc., acting in concert with Biocon Biologics UK Limited and Biocon Biologics Limited,  intends to develop, manufacture, import, market, distribute, offer for sale, and/or sell in Massachusetts and across the United States, a biosimilar version of Amgen's Prolia and XGEVA upon FDA approval and, in doing so, will improperly exploit Amgen's intellectual property surrounding these important medicines.

30.     Biocon Biologics Limited describes itself as "a unique, fully integrated, leading global biosimilars player and crossing the USD 1 billion revenue threshold."[3]

31.     Biocon Biologics Limited conducts the "sale of biopharmaceutical products" in the United States via its subsidiary, Biocon Biologics, Inc."[4]

32.     Biocon Biologics, Inc. "was established with an objective to undertake all the activities relating to pharmaceuticals, biopharmaceuticals[,] and biologics products, i.e. commercialization, distribution etc. in the USA and other geographies."[5]

33.     

34.     roposed Prolia biosimilar drug products are "[m]anufactured by" Biocon Biologics Inc.

---

[3] Biocon Biologics, *Biocon Biologics Integrated Annual Report 2023-24* at 158 https://www.biocon biologics.com/docs/Biocon_Biologics_Integrated_Annual_Report_2024.pdf (last accessed June 20, 2025)

[4] *Id*. at 271.

[5] *Id*. at 109.

## JURISDICTION AND VENUE

### A.    Subject-Matter Jurisdiction

35.    This action arises under the patent laws of the United States, Title 35 of the United States Code, Title 42 of the United States Code, and under the Declaratory Judgment Act of 1934 (28 U.S.C. §§ 2201–02), Title 28 of the United States Code.

36.    This Court has subject-matter jurisdiction over Amgen's claims under 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202.

### B.    Venue and Personal Jurisdiction

37.    Venue as to Biocon Biologics Limited is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because it is a foreign corporation and is therefore subject to suit in any judicial district.[6]

38.    Venue as to Biocon Biologics UK Limited is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because it is a foreign corporation and is therefore subject to suit in any judicial district.

39.    Venue as to Biocon Biologics Inc. is proper in this District pursuant to 28 U.S.C. § 1400(b) because, on information and belief, Biocon Biologics Inc. has systematic and continuous contacts with Massachusetts; has a regular and established place of business in Massachusetts; has its headquarters and principal place of business in Cambridge, Massachusetts; and, in particular, on information and belief, Biocon Biologics Inc. has committed an act of patent infringement under 35 U.S.C. § 271(e)(2)(C) by preparing and submitting Defendants' BLA for a proposed denosumab biosimilar in and from Massachusetts,

---

[6] *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 713-14 (1972); *In re HTC Corp.*, 889 F.3d 1349, 1357–58 (Fed. Cir. 2018).

and receiving correspondence with the FDA regarding Defendants' BLA at its office in Massachusetts, and attending FDA pre-investigational meetings virtually from its office in Massachusetts and/or preparing for such FDA pre-investigational meetings from its office in Massachusetts.

40.    On information and belief, Biocon Biologics Limited develops, manufactures, seeks regulatory approval for, markets, distributes, and sells pharmaceutical products, for use throughout the United States, including in this District.

41.    On information and belief, Biocon Biologics Inc. collaborated with Biocon Biologics Limited, and Biocon Biologics UK Limited, to develop, manufacture, seek regulatory approval for, market, distribute, and sell pharmaceutical products, for use throughout the United States, including in this District.

42.    On information and belief, Biocon Biologics Inc. collaborated with Biocon Biologics Limited, and Biocon Biologics UK Limited, to take substantial steps to prepare for and undertake the filing of a BLA for their proposed denosumab biosimilar products. On information and belief, such steps included preparing and submitting the BLA and sending and receiving correspondence with the FDA regarding Defendants' BLA.

43.    Venue is proper and this Court also has personal jurisdiction over each of the Defendants for the reasons set forth below.

### C.    Biocon Biologics Inc.

44.    This Court has personal jurisdiction over Biocon Biologics Inc. because, among other reasons, Biocon Biologics Inc., itself and through its collaboration with Biocon Biologics Limited, and Biocon Biologics UK Limited, has purposely availed itself of the benefits and protections of Massachusetts law such that it should reasonably anticipate being sued in this Court.

45.    On information and belief, Biocon Biologics Inc. imports, commercializes, distributes generic and biosimilar drugs throughout the United States, including in Massachusetts.

46.    This Court has personal jurisdiction over Biocon Biologics Inc. by virtue of the fact that it took the significant step to prepare and file Defendants' BLA seeking approval from the FDA to engage in the importation, use, offer for sale, or sale, of the Defendants' biosimilar products in Massachusetts and throughout the United States, which directly gives rise to Amgen's claims of patent infringement.

47.    On information and belief, Biocon Biologics Inc. intends to participate in the commercial importation, marketing, distribution, offering for sale, and/or sales of Defendants' proposed denosumab biosimilar products, for sale in Massachusetts and in the United States, upon FDA approval. On information and belief, Biocon Biologics Limited and Biocon Biologics UK Limited are responsible for commercial manufacturing and supply of biosimilars manufactured by and for Biocon Biologics Inc. On information and belief, Biocon Biologics Inc. will accordingly benefit commercially and be financially compensated for its active involvement in the use or sale of Defendants' proposed denosumab biosimilar products in Massachusetts and in the United States.

48.    On information and belief, if Defendants' BLA is approved, Biocon Biologics Inc. will import, market, distribute, offer for sale, and/or sell Defendants' proposed denosumab biosimilar products within the United States, including in Massachusetts, consistent with Biocon Biologics Inc.'s practices for the marketing and distribution of other biopharmaceutical products. On information and belief, Biocon Biologics Inc. regularly conducts business in Massachusetts, and its practices with other biopharmaceutical products have involved placing those products

into the stream of commerce for distribution throughout the United States, including in

Massachusetts. On information and belief, Biocon Biologics Inc.'s pharmaceutical products are

used and consumed within and throughout the United States, including in Massachusetts. Each of

these activities would have a substantial effect within Massachusetts and would constitute

infringement of the Patents-in-Suit in the event that one or more of Defendants' proposed

denosumab biosimilar products are approved before the Patents-in-Suit expire.

49.    On information and belief, Biocon Biologics Inc. is registered with the Secretary

of the Commonwealth of Massachusetts as a business operating in Massachusetts under Business

ID No. 001415461, with "The location of the Principal Office" listing an address in Cambridge,

Massachusetts.[7]

50.    On information and belief, the exercise of personal jurisdiction over Biocon

Biologics Inc. in this federal judicial district would not unfairly burden Biocon Biologics Inc.,

which maintains its principal office in this judicial district.

**D.    <u>Biocon Biologics UK Limited</u>**

51.    Biocon Biologics UK Limited is subject to personal jurisdiction in Massachusetts

because, among other reasons, through its parent Biocon Biologics Limited and its collaboration

with its wholly owned subsidiary Biocon Biologics Inc., Biocon Biologics UK Limited has

purposely availed itself of the benefits and protections of Massachusetts laws such that it should

reasonably anticipate being sued in this Court.

52.    On information and belief, Biocon Biologics UK Limited worked in concert with

Biocon Biologics Inc. and Biocon Biologics Limited, to take the significant step to prepare and

---

[7] Secretary of the Commonwealth of Massachusetts, Search for a Business Entity, https://corp.
sec.state.ma.us/corpweb/CorpSearch/CorpSearch.aspx (using "Search by entity name," enter
name: "Biocon Biologics Inc.") (last accessed June 26, 2025).

file Defendants' BLA seeking approval from the FDA to engage in the importation, use, offer for sale, or sale of Defendants' proposed denosumab biosimilar products in Massachusetts and throughout the United States.

53.     On information and belief, Biocon Biologics UK Limited intends to participate in the commercial manufacturing and supply of Defendants' proposed denosumab biosimilar products, for sale in Massachusetts and in the United States, upon FDA approval. On information and belief, Biocon Biologics UK Limited will accordingly benefit commercially and be financially compensated for its active involvement in the use or sale of Defendants' proposed denosumab biosimilar products in Massachusetts and in the United States.

54.     On information and belief, the exercise of personal jurisdiction over Biocon Biologics UK Limited in this federal judicial district would not unfairly burden Biocon Biologics UK Limited.

55.     Additionally, and in the alternative, this Court has personal jurisdiction over Biocon Biologics UK Limited under Federal Rule of Civil Procedure 4(k)(2) because Amgen's claims arise under federal law; Biocon Biologics UK Limited is a foreign defendant that is not subject to general personal jurisdiction in any state; and, on information and belief, Biocon Biologics UK Limited has sufficient contacts with the United States as a whole, including but not limited to, sponsoring the clinical trials for potential biosimilar pharmaceutical products (including a Phase I and Phase III trial for the denosumab biosimilar product that is the subject of the BLA No. ███), intended to be sold through its U.S. affiliates and agents that are distributed throughout the United States, such that this Court's exercise of jurisdiction over Biocon Biologics UK Limited satisfies due process.

E.    **Biocon Biologics Limited**

56.    Biocon Biologics Limited is subject to personal jurisdiction in Massachusetts because, among other reasons, through its wholly owned subsidiaries Biocon Biologics UK Limited and Biocon Biologics Inc., Biocon Biologics Limited has purposely availed itself of the benefits and protections of Massachusetts laws such that it should reasonably anticipate being sued in this Court.

57.    On information and belief, Biocon Biologics Limited worked in concert with Biocon Biologics UK Limited and Biocon Biologics Inc. to take the significant step to prepare and file Defendants' BLA seeking approval from the FDA to engage in the importation, use, offer for sale, or sale of Defendants' proposed denosumab biosimilar products in Massachusetts and throughout the United States. Biocon Biologics Limited specifically helped develop Bmab 1000 by manufacturing both Bmab 1000 drug substance and Bmab 1000 drug product.

58.    On information and belief, Biocon Biologics Limited intends to participate in the commercial manufacturing and supply of Defendants' proposed denosumab biosimilar products, for sale in Massachusetts and in the United States, upon FDA approval. On information and belief, Biocon Biologics Limited will accordingly benefit commercially and be financially compensated for its active involvement in the use or sale of Defendants' proposed denosumab biosimilar products in Massachusetts and in the United States.

59.    On information and belief, the exercise of personal jurisdiction over Biocon Biologics Limited in this federal judicial district would not unfairly burden Biocon Biologics Limited.

60.    Additionally, and in the alternative, this Court has personal jurisdiction over Biocon Biologics Limited under Federal Rule of Civil Procedure 4(k)(2) because Amgen's claims arise under federal law; Biocon Biologics Limited is a foreign defendant that is not

subject to general personal jurisdiction in any state; and, on information and belief, Biocon

Biologics Limited has sufficient contacts with the United States as a whole, including but not

limited to, importing nine shipments containing denosumab into the United States from 2022 to

2025, the most recent being on January 19, 2025.[8]

## THE PROLIA AND XGEVA DRUG PRODUCTS

### A.    Bone Metabolism and RANKL

61.    Human bones undergo a lifelong cycle of growth and resorption (*i.e.*, destruction)

that is essential to preserving bone integrity. This bone remodeling cycle involves a series of

coordinated steps carefully regulated by complex signaling pathways in the body.

62.    All tissues in the body express, or produce, proteins. Among those proteins is

receptor activator of nuclear factor kappa-β (also known as "RANK"), which is found on the

surface of cells called osteoclast precursors. RANK selectively binds to another protein—its

binding partner or "ligand"—called RANK ligand ("RANKL").[9] When RANKL binds to RANK

on the surface of osteoclast precursors, the interaction stimulates the precursor cell to transform

into a mature osteoclast cell. Mature osteoclasts carry out bone resorption, *i.e.* the breakdown of

bone. A different type of cell in the bone environment is called an "osteoblast." It performs the

opposite function as the osteoclast—it forms new bone.

63.    Normally, bone resorption is carried out in balance with bone formation.

However, imbalances between bone formation and bone resorption can occur. Imbalances can

result, for example, from menopause in women, glucocorticoid medications, androgen

---

[8] *See* FDA, FDA Imports Entry Data Search, https://datadashboard.fda.gov/ora/cd/impentry-table.htm (last accessed June 20, 2025) (using search with "Biocon" as the Manufacturer Legal Name and "denosumab" as the Product Code Description).

[9] RANK and RANKL are also sometimes referred to as osteoclast differentiation and activation receptor ("ODAR") and osteoprotegerin ligand ("OPGL") respectively.

deprivation therapy for prostate cancer, adjuvant aromatase inhibitor therapy for breast cancer, hyperparathyroidism, rheumatoid arthritis, and certain forms of bone cancer. A common consequence of this imbalance is excess bone loss, putting patients at higher risk for bone fractures.

### B.    Amgen's Invention of Prolia and XGEVA

64.    Amgen developed Prolia and XGEVA after years of groundbreaking research into the bone remodeling pathway. This research dates back to the late 1990s when studies by Amgen Inc. scientists identified the relationship between the protein RANKL (what they originally called "OPGL") and bone resorption. Amgen devoted significant resources to developing a treatment for diseases mediated by this mechanism, such as osteoporosis and disease states characterized by weakened bones, and invented novel pharmaceutical compositions that could be used in the treatment of such diseases.

65.    An Amgen team led by named inventor Dr. William Boyle pursued several avenues to create a biologic treatment that would interfere with interactions between RANKL and RANK and thereby reduce the rate of bone resorption in a patient. Among these efforts was a collaboration with Abgenix, Inc. using the latter's XenoMouse™ transgenic mouse platform. In collaboration with co-inventors at Abgenix, Dr. Boyle and his team used the XenoMouse to create a fully human antibody with superior and surprising qualities. This antibody is known today as denosumab.

66.    Denosumab, the active ingredient in Prolia and XGEVA, is a human IgG2 monoclonal antibody with affinity and specificity for human RANKL.

67.    Denosumab binds to RANKL, preventing it from interacting with RANK. By preventing the RANKL/RANK interaction, denosumab can inhibit osteoclast activation and thus

inhibit the breakdown of bone. By administering denosumab to a patient, bone breakdown can be decreased, thereby increasing bone mineral density and reducing the risk of bone fracture.

68.    In 2001, Dr. Boyle and his co-inventors filed U.S. Provisional Patent Application No. 60/301,172 (the "'172 Application"). The Boyle '736 Patent claims priority to the '172 Application. The '172 Application (and the Boyle '736 Patent) discloses and describes denosumab, including the specific heavy and light chain amino acid sequences of denosumab. The specification also discloses the particular heavy chain variable region sequence (SEQ ID NO: 13) and light chain variable region sequence (SEQ ID NO: 14) that form denosumab's antigen binding site and confer its unique binding properties for RANKL. The Boyle '736 Patent claims the denosumab antibody, as well as novel pharmaceutical compositions containing denosumab.

**C.    Amgen's Investment in Prolia and XGEVA**

69.    Today, denosumab is the active ingredient in two medicines that Amgen sells under two different brand names: Prolia and XGEVA. Prolia is indicated for the treatment of osteoporosis and other conditions associated with bone loss. XGEVA is indicated to treat bone cancers and to prevent fractures in cancer patients with bone metastases. On information and belief, the Defendants intend to market biosimilar versions of both products in the United States.

70.    At the time Dr. Boyle and his team were researching biologic treatments for bone loss, osteoporosis treatments largely consisted of bisphosphonates—small molecule (*i.e.*, chemical) drugs that needed to be taken frequently, had significant side effects, and low patient adherence. Few believed that a biologic could achieve a safety and efficacy profile that would make it a successful therapeutic for treating chronic bone loss. Dr. Boyle and his team developed denosumab and its pharmaceutical composition despite this skepticism and made a surprising discovery: denosumab for osteoporosis (which eventually was named Prolia) needed only to be

given to osteoporosis patients every 6 *months*, thereby substantially improving patient adherence over existing treatments like bisphosphonates—and clinical trials showed that it was well-tolerated over long-term administration.

71.    Based on the results of extensive clinical testing, Amgen filed Biologic BLA No. 125320 in December 2008. In June 2010, the FDA first approved Prolia (active ingredient denosumab, formulated in combination with sorbitol and acetate), pursuant to BLA No. 125320, for treating postmenopausal women with osteoporosis at high risk for fracture. Prolia was the first biologic ever approved to treat osteoporosis.

72.    Amgen's subsequent investigations identified additional uses for denosumab, including using denosumab to treat cancer patients. In November 2010, the FDA approved—via a supplement to BLA No. 125320—XGEVA (active ingredient denosumab, formulated in combination with sorbitol and acetate) for the prevention of skeletal-related events in patients with bone metastases from solid tumors. The XGEVA product is administered more frequently, and in higher doses, to patients given the acute nature of the disease being treated (*i.e.*, cancer, such as bone cancer where patients may have an over-expression of RANKL).

73.    Amgen's continued clinical testing revealed that denosumab was safe and effective to treat additional conditions beyond osteoporosis and skeletal-related events (*i.e.*, events that occur due to bone instability) in certain cancer patients. In September 2011, the FDA approved Prolia for the treatment of women at high risk for fracture receiving adjuvant aromatase inhibitor therapy for breast cancer and for the treatment of men at high risk for fracture receiving androgen deprivation therapy for nonmetastatic prostate cancer. In September 2012, the FDA approved Prolia for treatment to increase bone mass in men with osteoporosis at high risk for fracture. In June 2013, the FDA approved XGEVA for the treatment of adults and skeletally

mature adolescents with giant cell tumor of bone. In December 2014, the FDA approved

XGEVA for the treatment of hypercalcemia of malignancy refractory to bisphosphonate therapy.

In May 2018, the FDA approved Prolia for the treatment of glucocorticoid-induced osteoporosis

in men and women at high risk for fracture.

### D.    Amgen's Further Innovations in Antibody Manufacturing

74.    Amgen's further investments in research led to the development of novel

manufacturing processes related to denosumab and the larger field of commercial manufacturing

of antibody therapeutics for humans. Amgen's efforts in this field yielded advancements in

several key areas of manufacturing, such as cell culture and purification methods, to improve and

maintain product quality, consistency, safety, and effectiveness. Amgen obtained patent

protection over many of these advancements, some of which are reflected in the Patents-in-Suit.

### E.    The Defendants' Knowledge of the Patents-in-Suit

75.    As alleged herein, the Boyle '736 Patent issued on April 29, 2008. The Boyle

'736 Patent was identified in Amgen's patent marking for Prolia and XGEVA before Defendants

filed the BLA for their denosumab biosimilar product. At least as early as May 24, 2023, at least

one of the Patents-in-Suit, United States Patent No. 7,364,736, was identified on the FDA's

publication entitled *Lists of Licensed Biological Products with Reference Product Exclusivity

and Biosimilarity or Interchangeability Evaluation* ("the Purple Book").[10] Thus, the Defendants

had constructive notice of and were aware of, at minimum, one of Amgen's patents before the

filing of the BLA. *See* 35 U.S.C. § 287.

---

[10] US FDA, Purple Book Database of Licensed Biological Products, https://web.archive.org/web/
20230524143320/https://purplebooksearch.fda.gov/patent-list (last accessed June 20, 2025).

76.     On information and belief, the Defendants, by the nature of being involved in the business of developing and distributing biosimilars, monitor the patent filings and patent ownership of reference product sponsors, including Amgen, and were thus aware of the Patents-in-Suit and their applicability to the Defendants' denosumab biosimilar products before the filing of the BLA or entering into a global license agreement related to the denosumab biosimilar proposed therein.

77.     Further, as alleged herein, Amgen sent a letter to Defendants identifying the Patents-in-Suit on ████████████. Defendants were thus aware of the Patents-in-Suit at least as of ████████████.

### DEFENDANTS' FAILURE TO COMPLY WITH THE BPCIA

**A.      The BPCIA's Framework for Confidential Information Exchange**

78.     The BPCIA created an abbreviated pathway for the approval of biosimilar versions of approved biologic drugs. Subject to certain conditions, the abbreviated pathway (also known as "the section (k) pathway") permits a biosimilar applicant, here Defendants, to rely on the prior clinical tests, data, and results, and the prior licensure and approval status, of the innovative (or "reference") biological product, here, Prolia and XGEVA, to secure licensing of a biosimilar version of the reference biological product.

79.     The BPCIA provides that "[n]ot later than 20 days after the Secretary notifies the subsection (k) applicant that the application has been accepted for review, the subsection (k) applicant "shall provide to the reference product sponsor [1] a copy of the application submitted to the Secretary under subsection (k), and [2] such other information that describes the process or processes used to manufacture the biological product that is the subject of such application." 42 U.S.C. § 262(*l*)(2) (numeration added).

80.     The initial disclosure contemplated by section 262(*l*)(2) enables the reference product sponsor (here, Amgen) to prepare and provide "[n]ot later than 60 days after the receipt of the application and information under paragraph (2)," a "list of patents for which the reference product sponsor believes a claim of patent infringement could reasonably be asserted by the reference product sponsor . . . ." 42 U.S.C. § 262(*l*)(3)(A). This is known colloquially as a "3A List," and helps facilitate an efficient resolution of patent claims by enabling the product sponsor to "identify relevant patents and to flesh out the legal arguments that they might raise in future litigation." *Sandoz*, 582 U.S. at 4.

81.     However, if a subsection (k) applicant (here, Defendants) fails to comply with the initial disclosure requirements of section 262(*l*)(2)(A) by failing "to provide the application and information required," then the reference product sponsor (here, Amgen) is permitted to file an action for declaratory judgment of patent infringement, validity, or enforceability pursuant to 42 U.S.C. § 262(*l*)(9)(C).

82.     In the event the subsection (k) applicant complies with section 262(*l*)(2)(A), and the reference product sponsor tenders a timely 3A List, the subsection (k) applicant is required to provide, within 60 days of receiving the 3A List:

> (I)     a detailed statement that describes, on a claim by claim basis, the factual and legal basis of the opinion of the subsection (k) applicant that such patent [included in Amgen's list] is invalid, unenforceable, or will not be infringed by the commercial marketing of the biological product that is the subject of the subsection (k) application; or

> (II)    a statement that the subsection (k) applicant does not intend to begin commercial marketing of the biological product before the date that such patent expires . . . .

42 U.S.C. § 262(*l*)(3)(B)(ii).

83.    This "detailed statement" is colloquially referred to as a "3B Statement." The next step in the BPCIA's information exchange is for the reference product sponsor to provide, within 60 days, a "3C Statement" responding to the applicant's 3B Statement. 42 U.S.C. § 262(*l*)(3)(C).

**B.    Defendants' Non-Compliance with the BPCIA's Disclosure Provisions**

84.    Defendants submitted their BLA to the FDA pursuant to 42 U.S.C. § 262(k) in order to obtain approval to commercially manufacture, offer to sell, sell, and/or import in or into the United States, Defendants' proposed denosumab biosimilar products. Defendants' BLA references Amgen's Prolia and XGEVA products bearing BLA license No. 125320.

85.    On ████████████, Defendants informed Amgen that the "████████████ ██████████████████████████████████████," and that it was "████████████████████████████████████████████ ████████." Defendants' ████████████ production did not include "such other information that describes the process or processes used to manufacture the biological product that is the subject of that application," as contemplated by the second prong of section 262(*l*)(2)(A), nor did Defendants identify the date on which their BLA had been accepted by FDA.

86.    Upon reviewing Defendants' initial production of BLA documents, Amgen determined Defendants had not fully complied with section 262(*l*)(2)(A). Since receiving Defendants' initial production, Amgen has diligently evaluated the material provided and requested Defendants supplement their deficient production with manufacturing information.

87.    On ████████████, Amgen alerted Defendants that Amgen had "not ████████████████████████████████████████████████ ████████████████████████████." In that ████████████ deficiency letter, Amgen tendered a specific list of missing documents and information concerning the process used to manufacture Bmab 1000. The missing information included, but

was not limited to: ███████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████ and information on Defendants' processes for purifying drug substance.

88.    Following a meet and confer on ████████████, Amgen sent Defendants a

letter on ████████████ reiterating Amgen's request that "██████████████████

████████████████████████████ Noting that Amgen had "████████████

██████████████████████████" Amgen nonetheless identified five "████████

████████████████████ including ██████████████████████

████████████████████████████████████████

██████████████████████████. Amgen asked Biocon to confirm

that it "███████████████████████████████████████

███████████████████████████████████████"

89.    On ████████████, Defendants flatly rejected Amgen's multiple requests for

manufacturing information under section 262($l$)(2)(A), stating that "████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████"

90.    After conducting an analysis to the best of its ability based on the limited

information available, Amgen provided to Defendants on ████████████ a "list of patents" that

"could reasonably be asserted if the denosumab biosimilar product that is the subject of" the

BLA Defendants provided on ███████████, "is made, used, offered for sale, or sold in, or

imported into, the United States without a license from Amgen." In this letter, Amgen

maintained its position that Defendants had not complied with section 262(*l*)(2)(A)—that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████.'"

Amgen's ████████████ letter identified all of the Patents-in-Suit, and those same patents

could have been identified in Amgen's section 262(*l*)(3)(A) list had Defendants complied with

section 262(*l*)(2)(A).

     91.     On ████████, Defendants tendered to Amgen a purported "detailed

statement" in response to Amgen's ████████████ list of patents. Defendants did not produce

any information in connection with this ████████ letter, and the letter did not provide any

additional manufacturing information. To date, Defendants have failed to provide Amgen

sufficient information to meaningfully evaluate Defendants' position on the patents included in

Amgen's list.

     92.     Nevertheless, on ████████████ Amgen provided a response to address

Defendants' assertions in their ████████████ letter, and to provide additional information to

Defendants regarding the factual and legal basis of Amgen's opinion that each patent identified

in Amgen's ████████████ letter has been or will be infringed by Defendants' proposed

denosumab biosimilar products. Amgen explained that Defendants had, by withholding

information, necessarily limited Amgen's ability to fully assess patent infringement.

93.     Amgen has participated in the pre-litigation exchange contemplated under the BPCIA to the best of its ability. Amgen's efforts, however, have been frustrated by Defendants' initial and ongoing failure to comply with section 262(*l*)(2)(A) of the BPCIA. Defendants' failure to produce the manufacturing information required by section 262(*l*)(2)(A), has and will continue to prejudice Amgen's efforts to conduct a complete patent infringement analysis.

94.     Defendants' failure to comply with section 262(*l*)(2)(A) authorizes Amgen to file an action for declaratory judgment of patent infringement, validity, or enforceability. 42 U.S.C. § 262(*l*)(9)(C).

95.     On information and belief, Defendants' proposed denosumab biosimilar products are manufactured by methods that utilize Amgen inventions related to various manufacturing processes, and on information and belief, Defendants, alone or in concert with others acting on behalf of Defendants or their affiliates, will manufacture these proposed denosumab biosimilar products. The full extent of Defendants' utilization of Amgen's manufacturing processes cannot yet be ascertained because of Defendants' failure to provide complete information.

**C.**     ████████████████████████████████████████

96.     ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████

97.     The FDA has stated publicly that the agency's goal is to act on the majority of subsection (k) applications within 10 months of an application's 60-day filing date.[11] This 10-month date is sometimes called a "BsUFA III date," which is an abbreviation for Biosimilar User Fee Act III date. ████████████████████████████████

████████████████████████████████████████

████████████████████████

98.     ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

**DEFENDANTS' IMPORTATION OF INFRINGING MATERIAL**

99.     On information and belief, Defendants have imported into and/or will import into the United States Defendants' proposed denosumab biosimilar product(s) before the expiration of one or more of the Patents-in-Suit. According to the publicly available FDA Dashboard, Biocon has imported at least eight shipments of infringing products from India and Germany into the United States.[12]

---

[11] *See* US FDA, *Biosimilar Biological Product Reauthorization Performance Goals and Procedures Fiscal Years 2023 through 2027*, https://www.fda.gov/media/152279/download?attachment (last accessed June 20, 2025) ("Review performance goals . . . Review and act on 90 percent of original 351(k) BLA submissions within 10 months of the 60 day filing date."); *see also* US FDA, *BsUFA III: Fiscal Years 2023-2027*, https://www.fda.gov/industry/biosimilar-user-fee-amendments/bsufa-iii-fiscal-years-2023-2027 (last accessed June 20, 2025).
[12] *See* US FDA, FDA Data Dashboard, https://datadashboard.fda.gov/oii/cd/impentry-table.htm (using search with "Biocon" as the Manufacturer Legal Name and "denosumab, monoclonal antibodies" as the Product Code Description, and selecting "Download Dataset") (last accessed June 25, 2025). *See also, e.g.*, US FDA, FDA Data Dashboard, https://www.access.fda.gov/itacs/#/ (using search for Entry Numbers: BUP-1705429-0, 147-0205044-5, BUP-1717026-0, BUP-1717033-6, BUP-1717038-5, BUP-1727998-8, and EH1-0394430-0) (last accessed June 25, 2025).

100. 

## THE PATENTS-IN-SUIT

### A.    The Allen '134 Patent

101.    The USPTO duly and legally issued the Allen '134 Patent, titled "Carbohydrate Phosphonate Derivatives and Modulators of Glycosylation" on May 3, 2016. The Allen '134 Patent as a general matter discloses and claims compounds useful for modulating glycosylation.

102.    The Allen '134 Patent is assigned to Amgen Inc. AML has a license to the Allen '134 Patent that is exclusive with respect to Prolia and XGEVA. The Allen '134 Patent was identified in the letter Amgen Inc. sent to Defendants on ████████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ████████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

### B.    The Boyle '736 Patent

103.    The United States Patent and Trademark Office ("USPTO") duly and legally issued the Boyle '736 Patent, titled "Antibodies to OPGL," on April 29, 2008. The Boyle '736

Patent discloses and claims denosumab. The Boyle '736 Patent is and has been identified on the label for XGEVA and Prolia.[13]

104.    The Boyle '736 Patent is assigned to Amgen Inc. AML has a license to the Boyle '736 Patent that is exclusive with respect to Prolia and XGEVA. The Boyle '736 Patent was identified in the letter Amgen Inc. sent to Defendants on ██████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

### C.    The Boyle '418 Patent

105.    The USPTO duly and legally issued the Boyle '418 Patent, titled "Polynucleotides Encoding Heavy and Light Chains of Antibodies to OPGL" on November 15, 2011. The Boyle '418 Patent as a general matter discloses compositions comprising polynucleotides encoding heavy and light chains of antibodies that interact with osteoproteogerin ligand and methods of making such antibodies.

106.    The Boyle '418 Patent is assigned to Amgen Inc. AML has a license to the Boyle '418 Patent that is exclusive with respect to Prolia and XGEVA. The Boyle '418 Patent was identified in the letter Amgen Inc. sent to Defendants on ██████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Biocon provided on ████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

---

[13] *See* https://pat.amgen.com/pdf/pat.amgen.com_Prolia.pdf (Boyle '736 Patent listed in "Version 2023.03.03"); https://pat.amgen.com/pdf/pat.amgen.com_Xgeva.pdf (last accessed June 20, 2025).

D.    **The Crowell '248, '896, '210, and '101 Patents**

107.    The USPTO duly and legally issued the Crowell '248 Patent, titled "Host Cells Comprising Alpha 1,2 Mannosidase and Culture Methods Thereof," on March 25, 2014. The Crowell '248 Patent as a general matter discloses and claims a glycoprotein product produced by a process of culturing an isolated host cell engineered to overexpress alpha 1,2 mannosidase native to the host cell, and a glycoprotein of interest.

108.    The USPTO duly and legally issued the Crowell '896 Patent, titled "Host Cells and Culture Methods," on June 11, 2013. The Crowell '896 Patent as a general matter discloses and claims methods of producing glycoproteins of interest by culturing an isolated host cell engineered to overexpress alpha 1,2 mannosidase native to the host cell, and a glycoprotein of interest.

109.    The USPTO duly and legally issued the '210 Patent, titled "Host Cells Comprising Alpha 1,2 Mannosidase and Culture Methods Thereof," on August 21, 2012. The '210 Patent as a general matter discloses and claims a glycoprotein product produced by a process of culturing an isolated host cell engineered to overexpress alpha 1,2 mannosidase native to the host cell, and a glycoprotein of interest.

110.    The USPTO duly and legally issued the '101 Patent, titled "Host Cells Comprising Alpha 1,2 Mannosidase and Culture Methods Thereof," on February 15, 2011. The '101 Patent as a general matter discloses and claims methods of producing glycoproteins of interest by culturing an isolated host cell engineered to overexpress alpha 1,2 mannosidase native to the host cell, and a glycoprotein of interest.

111.    The Crowell '248, '896, '210, and '101 Patents are assigned to Amgen Inc. AML has a license to the Crowell '248, '896, '210, and '101 Patents that is exclusive with respect to Prolia and XGEVA. The Crowell '248, '896, '210, and '101 Patents were identified in the letter

Amgen Inc. sent to Defendants on █████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on █████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

E.    **The Crowell '686 Patent**

112.    The USPTO duly and legally issued the Crowell '686 Patent, titled "Antibodies with Modulated Glycan Profiles," on September 10, 2024. The Crowell '686 Patent as a general matter discloses and claims methods for modulating glycan profiles of denosumab molecules.

113.    The Crowell '686 Patent is assigned to Amgen Inc. AML has a license to the Crowell '686 Patent that is exclusive with respect to Prolia and XGEVA. The Crowell '686 Patent was identified in the letter Amgen Inc. sent to Defendants on █████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on █████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

F.    **The Dillon '205 Patent**

114.    The USPTO duly and legally issued the Dillon '205 Patent, titled "Methods for Refolding of Recombinant Antibodies," on April 19, 2011. The Dillon '205 Patent as a general matter discloses and claims methods of producing IgG2 antibodies by using a reduction/oxidation coupling reagent and optionally a chaotropic agent.

115.    The Dillon '205 Patent is assigned to Amgen Inc. AML has a license to the Dillon '205 Patent that is exclusive with respect to Prolia and XGEVA. The Dillon '205 Patent was identified in the letter Amgen Inc. sent to Defendants on █████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject

of the BLA Defendants provided on ██████████ is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

### G.    The Gefroh '397 and '404 Patents

116.    The USPTO duly and legally issued the Gefroh '397 Patent, titled "Process Control Systems and Methods for Use with Filters and Filtration Processes," on March 10, 2020. The Gefroh '397 Patent as a general matter discloses and claims systems and methods used to control flow filtration in the production and/or purification of recombinant proteins.

117.    The USPTO duly and legally issued the Gefroh '404 Patent, titled "Process control systems and methods for use with filters and filtration processes," on August 3, 2021. The Gefroh '404 Patent as a general matter discloses and claims systems and methods used to control flow filtration in the production and/or purification of recombinant proteins.

118.    The Gefroh '397 and '404 Patents are assigned to Amgen Inc. AML has a license to the Gefroh '397 and '404 Patents that is exclusive with respect to Prolia and XGEVA. The Gefroh '397 and '404 Patents were identified in the letter Amgen Inc. sent to Defendants on ██████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the  BLA Defendants provided on ██████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

### H.    The Gupta '186, '829, '627, and '156 Patents

119.    The USPTO duly and legally issued the Gupta '186 Patent, titled "Overexpression of N-Glycosylation Pathway Regulators to Modulate Glycosylation of Recombinant Proteins" on February 2, 2021. The Gupta '186 Patent as a general matter discloses and claims methods of modulating the properties of a cell culture expressing a protein of interest with embodiments relating to overexpression of proteins involved in the N-glycosylation pathway.

120.    The USPTO duly and legally issued the Gupta '829 Patent, titled "Overexpression of N-Glycosylation Pathway Regulators to Modulate Glycosylation of Recombinant Proteins," on October 23, 2018. The Gupta '829 Patent as a general matter discloses and claims methods of regulating the high mannose glycoform content of recombinant proteins during a mammalian cell culture process.

121.    The USPTO duly and legally issued the Gupta '627 Patent, titled "Overexpression of N-Glycosylation Pathway Regulators to Modulate Glycosylation of Recombinant Proteins," on March 12, 2019. The Gupta '627 Patent as a general matter discloses and claims methods of regulating the high mannose glycoform content of recombinant proteins during a mammalian cell culture process.

122.    The USPTO duly and legally issued the Gupta '156 Patent, titled "Overexpression of N-Glycosylation Pathway Regulators to Modulate Glycosylation of Recombinant Proteins," on May 19, 2020. The Gupta '156 Patent as a general matter discloses and claims methods of regulating the high mannose glycoform content of recombinant proteins during a mammalian cell culture process.

123.    The Gupta '186, '829, '627, and '156 Patents are assigned to Amgen Inc. AML has a license to the Gupta '186, '829, '627, and '156 Patents that is exclusive with respect to Prolia and XGEVA. The Gupta '186, '829, '627, and '156 Patents were identified in the letter Amgen Inc. sent to Defendants on ████████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ████████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

I.      **The Hoang '079 Patent**

124.    The USPTO duly and legally issued the Hoang '079 Patent, titled "Charging Depth Filtration of Antigen-Binding Proteins," on August 24, 2021. The Hoang '079 Patent as a general matter discloses and claims methods of using a charged depth filter to purify an antigen-binding protein.

125.    The Hoang '079 Patent is assigned to Amgen Inc. AML has a license to the Hoang '079 Patent that is exclusive with respect to Prolia and XGEVA. The Hoang '079 Patent was identified in the letter Amgen Inc. sent to Defendants on ███████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ███████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

J.      **The Huang '972, '514, and '085 Patents**

126.    The USPTO duly and legally issued the Huang '972 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins" on January 19, 2021. The Huang '972 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of a recombinant protein during a mammalian cell culture by adding mannose sugars after establishing the cell culture, and manipulating the mannose to total hexose ratio in the cell culture and feed media.

127.    The USPTO duly and legally issued the Huang '514 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins" on September 6, 2022. The Huang '514 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of denosumab during a mammalian cell culture by adding mannose sugars during a production phase and manipulating the mannose to total hexose ratio in the cell culture and feed media

34

128.    The USPTO duly and legally issued the Huang '085 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on April 2, 2024. The Huang '085 Patent as a general matter discloses and claims methods for controlling mannose-5 glycoform content of denosumab molecules by adding mannose and glucose sugars and manipulating the mannose to total hexose ratio in the cell culture media.

129.    The Huang '972, '514, and '085 Patents are assigned to Amgen Inc. AML has a license to the Huang '972, '514, and '085 Patents that is exclusive with respect to Prolia and XGEVA. The Huang '972, '514, and '085 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ███████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

### K.    The Kang '723 and '963 Patents

130.    The USPTO duly and legally issued the Kang '723 Patent, titled "Decreasing Ornithine Production to Decrease High Mannose Glycoform Content of Recombinant Proteins," on December 24, 2019. The Kang '723 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of a recombinant protein.

131.    The USPTO duly and legally issued the Kang '963 Patent, titled "Increasing Ornithine Accumulation to Increase High Mannose Glycoform Content of Recombinant Proteins," on February 22, 2022. The Kang '963 Patent as a general matter discloses and claims methods of influencing the high mannose glycoform content of a recombinant protein.

132.    The Kang '723 and '963 Patents are assigned to Amgen Inc. AML has a license to the Kang '723 and '963 Patents that is exclusive with respect to Prolia and XGEVA. The Kang '723 and '963 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████████

██, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ████████ is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

**L.    The Kang '178 Patent**

133.    The USPTO duly and legally issued the Kang '178 Patent, titled "Dipeptides to Enhance Yield and Viability from Cell Cultures," on April 21, 2015. The Kang '178 Patent as a general matter discloses and claims particular dipeptides that can improve recombinant protein production and cell viability in cell cultures.

134.    The Kang '178 Patent is assigned to Amgen Inc. AML has a license to the Kang '178 Patent that is exclusive with respect to Prolia and XGEVA. The Kang '178 Patent was identified in the letter Amgen Inc. sent to Defendants on ████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

**M.    The Leiske '492 and '630 Patents**

135.    The USPTO duly and legally issued the Leiske '492 Patent, titled "Process for Manipulating the Level of Glycan Content of a Glycoprotein" on January 1, 2019. The Leiske '492 Patent as a general matter discloses and claims a method for manipulating the fucosylated glycan content on a recombinant protein.

136.    The USPTO duly and legally issued the Leiske '630 Patent, titled "Process for Manipulating the Level of Glycan Content of a Glycoprotein" on November 3, 2020. The Leiske '630 Patent as a general matter discloses and claims a method for manipulating the fucosylated glycan content on a recombinant protein.

137.    The Leiske '492 and '630 Patents are assigned to Amgen Inc. AML has a license to the Leiske '492 and '630 Patents that is exclusive with respect to Prolia and XGEVA. The Leiske '492 and '630 Patents were identified in the letter Amgen Inc. sent to Defendants on ████████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ████████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

N.    **The Morris '236 and '168 Patents**

138.    The USPTO duly and legally issued the Morris '236 Patent, titled "Feed Media," on November 8, 2011. The Morris '236 Patent as a general matter discloses and claims feed media and methods for stabilizing feed media, where the feed media contains certain concentrations of particular components.

139.    The USPTO duly and legally issued the Morris '168 Patent, titled "Feed media," on January 5, 2016. The Morris '168 Patent as a general matter discloses and claims methods for stabilizing feed media for culturing mammalian cells by adding pyruvate.

140.    The Morris '236 and '168 Patents are assigned to Amgen Inc. AML has a license to the Morris '236 and '168 Patents that is exclusive with respect to Prolia and XGEVA. The Morris '236 and '168 Patents were identified in the letter Amgen Inc. sent to Defendants on ████████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ████████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

O.    **The Pande '980 and '760 Patents**

141.    The USPTO duly and legally issued the Pande '980 Patent, titled "Use of Monensin to Regulate Glycosylation of Recombinant Proteins" on September 28, 2021. The Pande '980 Patent as a general matter discloses and claims methods of modulating high mannose glycoform content of a protein in a cell culture by contacting the cells expressing the protein with monensin.

142.    The USPTO duly and legally issued the Pande '760 Patent, titled "Use of Monensin to Regulate Glycosylation of Recombinant Proteins" on April 12, 2022. The Pande '760 Patent as a general matter discloses and claims methods of modulating the properties of a cell culture expressing a protein of interest with various embodiments relating to the addition of cell-cycle inhibitors to growing cell cultures.

143.    The Pande '980 and '760 Patents are assigned to Amgen Inc. AML has a license to the Pande '980 and '760 Patents that is exclusive with respect to Prolia and XGEVA. The Pande '980 and '760 Patents were identified in the letter Amgen Inc. sent to Defendants on █████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on █████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

P.    **The Trejo '919 and '372 Patents**

144.    The USPTO duly and legally issued the Trejo '919 Patent, titled "Removal of Leaked Affinity Purification Ligand," on December 7, 2021. The Trejo '919 Patent as a general matter discloses and claims methods for purifying a recombinant protein from a sample containing the recombinant protein and a second protein that binds to the protein, using a tentacle anion exchange matrix chromatography medium.

145.    The USPTO duly and legally issued the Trejo '372 Patent, titled "Removal of Leaked Affinity Purification Ligand," on November 8, 2022. The Trejo '372 Patent as a general matter discloses and claims methods for purifying an antibody from a sample containing the antibody and a second protein that binds to the antibody, using a tentacle anion exchange matrix chromatography medium.

146.    The Trejo '919 and '372 Patents are assigned to Amgen Inc. AML has a license to the Trejo '919 and '372 Patents that is exclusive with respect to Prolia and XGEVA. The Trejo '919 and '372 Patents were identified in the letter Amgen Inc. sent to Defendants on ██████████ ████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the  BLA Defendants provided on ██████████████ made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

**Q.    The Wu '435 Patent**

147.    The USPTO duly and legally issued the Wu '435 Patent, titled "Methods for Modulating Mannose Content of Recombinant Proteins," on June 7, 2016. The Wu '435 Patent as a general matter discloses and claims methods of modulating the high-mannose glycoform content of a recombinant protein during a mammalian cell culture.

148.    The Wu '435 Patent is assigned to Amgen Inc. AML has a license to the Wu '435 Patent that is exclusive with respect to Prolia and XGEVA. The Wu '435 Patent was identified in the letter Amgen Inc. sent to Defendants on ███████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ███████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

R.    <u>The Wu '568, '595, and '605 Patents</u>

149.    The USPTO duly and legally issued the Wu '568 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on May 3, 2022. The Wu '568 Patent as a general matter discloses and claims methods for modulating mannose 5 on recombinant proteins during a mammalian cell culture process.

150.    The USPTO duly and legally issued the Wu '595 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on October 4, 2022. The Wu '595 Patent as a general matter discloses and claims methods for modulating mannose 5 on an immunoglobulin molecule during a mammalian cell culture process.

151.    The USPTO duly and legally issued the Wu '605 Patent, titled "Methods for Increasing Mannose Content of Recombinant Proteins," on April 9, 2024. The Wu '605 Patent as a general matter discloses and claims methods of modulating the amount of the mannose-5 glycoform of an IgG2 molecule in an IgG2 composition, as well as methods of producing IgG2 compositions, by a Chinese Hamster Ovary cell culture.

152.    The Wu '568, '595, and '605 Patents are assigned to Amgen Inc. AML has a license to the Wu '568, '595, and '605 Patents that is exclusive with respect to Prolia and XGEVA. The Wu '568, '595, and '605 Patents were identified in the letter Amgen Inc. sent to Defendants on ███████████, containing a list of patents that could reasonably be asserted if the denosumab biosimilar product that is the subject of the BLA Defendants provided on ███████████, is made, used, offered for sale, or sold in, or imported into, the United States without a license from Amgen.

<u>COUNT 1: INFRINGEMENT OF THE ALLEN '134 PATENT</u>

153.    Paragraphs 1–152 are incorporated by reference as if fully set forth herein.

154.    Based on information presently available to Amgen, and in view of Defendants'
failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to
fully evaluate whether the Allen '134 Patent has been or will be infringed, the Defendants have
infringed the Allen '134 Patent under at least 35 U.S.C. §§ 271 (b), (e), and (g).

155.    On information and belief, based on information presently available to Amgen,
the submission of Defendants' BLA to obtain FDA approval to engage in the commercial
manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants'
proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of
infringement, either literally or under the doctrine of equivalents, of one or more claims of the
Allen '134 Patent, including at least claim 35.

156.    On information and belief, Defendants' proposed denosumab biosimilar products
and manufacturing process infringe, either literally or under the doctrine of equivalents, one or
more claims of the Allen '134 Patent, including at least claim 35, and the denosumab made by
that process is the essential active ingredient of Defendants' proposed denosumab biosimilar
products.

157.    On information and belief, based on information presently available to Amgen,
including information from the FDA Dashboard pertaining to Defendants' past imports of
denosumab from India and Germany into the United States, Defendants' importation into,
commercial manufacture, sale, offer for sale, or use within the United States of one or more of
Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,
constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or
more claims of the Allen '134 Patent, including at least claim 35. On information and belief,
Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the

United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Allen '134 Patent, constitutes willful infringement.

158.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Allen '134 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

159.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Allen '134 Patent.

## COUNT 2: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE ALLEN '134 PATENT

160.    Paragraphs 1–159 are incorporated by reference as if fully set forth herein.

161.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Allen '134 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Allen '134 Patent, including at least claim 35, under at least 35 U.S.C. §§ 271 (b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Allen '134 Patent, or will actively induce such activities.

162.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either

literally or under the doctrine of equivalents, one or more claims of the Allen '134 Patent, including at least claim 35, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

163.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Allen '134 Patent, will infringe one or more claims of the Allen '134 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

164.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Allen '134 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Allen '134 Patent.

165.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Allen '134 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Allen '134 Patent.

## COUNT 3: INFRINGEMENT OF THE BOYLE '736 PATENT

166.    Paragraphs 1–165 are incorporated by reference as if fully set forth herein.

167.    Based on information presently available to Amgen, Defendants have infringed the Boyle '736 Patent under at least 35 U.S.C. §§ 271(a), (b), and (e).

168.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Boyle '736 Patent, including at least claim 3.

169.    On information and belief, Defendants' proposed denosumab biosimilar products infringe, either literally or under the doctrine of equivalents, one or more claims of the Boyle '736 Patent, including at least claim 3.

170.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Boyle '736 Patent, including at least claim 3. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Boyle '736 Patent, constitutes willful infringement.

171.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '736 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

## COUNT 4: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE BOYLE '736 PATENT

172.    Paragraphs 1–171 are incorporated by reference as if fully set forth herein.

173.    Based on information presently available to Amgen, on information and belief, the Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '736 Patent, including at least claim 3, under at least 35 U.S.C. §§ 271(a) and (b). On information and belief, Defendants have imported into the United States, or used, offered for sale, or sold within the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Boyle '736 Patent.

174.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Boyle '736 Patent, infringed one or more claims of the Boyle '736 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

175.    Amgen is entitled to a declaratory judgment that Defendants infringed one or more claims of the Boyle '736 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Boyle '736 Patent.

## COUNT 5: INFRINGEMENT OF THE BOYLE '418 PATENT

176.    Paragraphs 1–175 are incorporated by reference as if fully set forth herein.

177.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Boyle '418 Patent has been or will be infringed, the Defendants have infringed the Boyle '418 Patent under at least 35 U.S.C. §§ 271(a), (b), and (g).

178.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Boyle '418 Patent, including at least claim 14.

179.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, ███████████████████ ████████████████████████████, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Boyle '418 Patent, including at least claim 14. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products ██████ ████████████████, or active inducement thereof, despite knowledge of the Boyle '418 Patent, constitutes willful infringement.

180.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '418 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

## COUNT 6: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE BOYLE '418 PATENT

181.    Paragraphs 1–180 are incorporated by reference as if fully set forth herein.

182.    Based on information presently available to Amgen, on information and belief, the Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Boyle '418 Patent, including at least claim 14, under at least 35 U.S.C. §§ 271(a), (b), and (g).

183.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Boyle '418 Patent, infringed one or more claims of the Boyle '418 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

184.    Amgen is entitled to a declaratory judgment that Defendants infringed one or more claims of the Boyle '418 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Boyle '418 Patent.

## COUNT 7: INFRINGEMENT OF THE CROWELL '248 PATENT

185.    Paragraphs 1–184 are incorporated by reference as if fully set forth herein.

186.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to

fully evaluate whether the Crowell '248 Patent has been or will be infringed, the Defendants have infringed the Crowell '248 Patent under at least 35 U.S.C. §§ 271(a), (b), and (e).

187.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '248 Patent, including at least claim 1.

188.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent, including at least claim 1, and Defendants' denosumab is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

189.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '248 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Crowell '248 Patent, constitutes willful infringement.

190.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

191.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '248 Patent.

## COUNT 8: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '248 PATENT

192.    Paragraphs 1–191 are incorporated by reference as if fully set forth herein.

193.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '248 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(a) and (b). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Crowell '248 Patent, or will actively induce such activities.

194.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '248 Patent, including at least claim

1, and Defendants' denosumab is the essential active ingredient of Defendants' proposed

denosumab biosimilar products.

195.    An actual controversy has arisen and now exists between the parties concerning

whether the Defendants' making, using, offering to sell, and selling within the United States, and

importing into the United States, their proposed denosumab biosimilar products, before the

expiration of the Crowell '248 Patent, will infringe one or more claims of the Crowell '248

Patent. A judicial determination of infringement is necessary and appropriate to resolve this

controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the

Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C.

§§ 2201, 2202.

196.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or

more claims of the Crowell '248 Patent by making, using, offering to sell, or selling within the

United States, or importing into the United States, their denosumab biosimilar products before

the expiration of the Crowell '248 Patent.

197.    Amgen will suffer irreparable injury for which damages are an inadequate remedy

if Defendants are not enjoined from infringing one or more claims of the Crowell '248 Patent.

Amgen does not have an adequate remedy at law and seeks injunctive relief preventing

Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the

Crowell '248 Patent.

### COUNT 9: INFRINGEMENT OF THE CROWELL '896 PATENT

198.    Paragraphs 1–197 are incorporated by reference as if fully set forth herein.

199.    Based on information presently available to Amgen, and in view of Defendants'

failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to

fully evaluate whether the Crowell '896 Patent has been or will be infringed, the Defendants have infringed the Crowell '896 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

200.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '896 Patent, including at least claim 1.

201.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

202.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '896 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active

inducement thereof, despite knowledge of the Crowell '896 Patent, constitutes willful infringement.

203.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

204.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '896 Patent.

## COUNT 10: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '896 PATENT

205.    Paragraphs 1–204 are incorporated by reference as if fully set forth herein.

206.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262($l$)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell' 896 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Crowell '896 Patent, or will actively induce such activities.

207.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either

literally or under the doctrine of equivalents, one or more claims of the Crowell '896 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

208.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '896 Patent, will infringe one or more claims of the Crowell '896 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

209.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '896 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '896 Patent.

210.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '896 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '896 Patent.

## COUNT 11: INFRINGEMENT OF THE CROWELL '210 PATENT

211.    Paragraphs 1–210 are incorporated by reference as if fully set forth herein.

212.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '210 Patent has been or will be infringed, the Defendants have infringed the Crowell '210 Patent under at least 35 U.S.C. §§ 271(a), (b) and (e).

213.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '210 Patent, including at least claim 1.

214.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '210 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

215.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, ███████████████████ ████████████████████████████, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '210 Patent, including at least claim 1. On information and belief,

Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products ███████ ████████████████, or active inducement thereof, despite knowledge of the Crowell '210 Patent, constitutes willful infringement.

216.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '210 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

217.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '210 Patent.

## COUNT 12: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '210 PATENT

218.    Paragraphs 1–217 are incorporated by reference as if fully set forth herein.

219.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '210 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '210 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271 (a) and (b). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Crowell '210 Patent, or will actively induce such activities.

220.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '210 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

221.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '210 Patent, will infringe one or more claims of the Crowell '210 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

222.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '210 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '210 Patent.

223.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '210 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '210 Patent.

## COUNT 13: INFRINGEMENT OF THE CROWELL '101 PATENT

224.    Paragraphs 1–223 are incorporated by reference as if fully set forth herein.

225.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '101 Patent has been or will be infringed, the Defendants have infringed the Crowell '101 Patent under at least 35 U.S.C. §§ 271(a), (b), (e), and (g).

226.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '101 Patent, including at least claim 15.

227.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '101 Patent, including at least claim 15, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

228.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, ███████████████, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or

more claims of the Crowell '101 Patent, including at least claim 15. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products ████ ███████████████, or active inducement thereof, despite knowledge of the Crowell '101 Patent, constitutes willful infringement.

229.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '101 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

230.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '101 Patent.

## COUNT 14: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '101 PATENT

231.    Paragraphs 1–230 are incorporated by reference as if fully set forth herein.

232.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '101 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '101 Patent, including at least claim 15, under at least 35 U.S.C. §§ 271(a), (b), and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Crowell '101 Patent, or will actively induce such activities.

233.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '101 Patent, including at least claim 15, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

234.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '101 Patent, will infringe one or more claims of the Crowell '101 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

235.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '101 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '101 Patent.

236.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '101 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '101 Patent.

## COUNT 15: INFRINGEMENT OF THE CROWELL '686 PATENT

237.    Paragraphs 1–236 are incorporated by reference as if fully set forth herein.

238.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '686 Patent has been or will be infringed, the Defendants have infringed the Crowell '686 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

239.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '686 Patent, including at least claim 1.

240.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

241.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Crowell '686 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Crowell '686 Patent, constitutes willful infringement.

242.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

243.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Crowell '686 Patent.

## COUNT 16: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE CROWELL '686 PATENT

244.    Paragraphs 1–243 are incorporated by reference as if fully set forth herein.

245.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Crowell '686 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Crowell '686 Patent, or will actively induce such activities.

246.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Crowell '686 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

247.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Crowell '686 Patent, will infringe one or more claims of the Crowell '686 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

248.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Crowell '686 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Crowell '686 Patent.

249.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Crowell '686 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Crowell '686 Patent.

## COUNT 17: INFRINGEMENT OF THE DILLON '205 PATENT

250.    Paragraphs 1–249 are incorporated by reference as if fully set forth herein.

251.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Dillon '205 Patent has been or will be infringed, the Defendants have infringed the Dillon '205 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

252.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Dillon '205 Patent, including at least claims 1 and 40.

253.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent, including at least claims 1 and 40, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

254.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Dillon '205 Patent, including at least claims 1 and 40. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Dillon '205 Patent, constitutes willful infringement.

255.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

256.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Dillon '205 Patent.

## COUNT 18: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE DILLON '205 PATENT

257.    Paragraphs 1–256 are incorporated by reference as if fully set forth herein.

258.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Dillon '205 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent, including at least claims 1 and 40, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of

Defendants' proposed denosumab biosimilar products before expiration of the Dillon '205 Patent, or will actively induce such activities.

259.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Dillon '205 Patent, including at least claims 1 and 40, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

260.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Dillon '205 Patent, will infringe one or more claims of the Dillon '205 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

261.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Dillon '205 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Dillon '205 Patent.

262.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Dillon '205 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Dillon '205 Patent.

## COUNT 19: INFRINGEMENT OF THE HUANG '972 PATENT

263.    Paragraphs 1–262 are incorporated by reference as if fully set forth herein.

264.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '972 Patent has been or will be infringed, the Defendants have infringed the Huang '972 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

265.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '972 Patent, including at least claim 3.

266.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent, including at least claim 3, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

267.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '972 Patent, including at least claim 3. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Huang '972 Patent, constitutes willful infringement.

268.   Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

269.   Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Huang '972 Patent.

## COUNT 20: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HUANG '972 PATENT

270.   Paragraphs 1–269 are incorporated by reference as if fully set forth herein.

271.   Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '972 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent, including at least claim 3, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Huang '972 Patent, or will actively induce such activities.

272.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '972 Patent, including at least claim 3, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

273.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Huang '972 Patent, will infringe one or more claims of the Huang '972 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

274.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Huang '972 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Huang '972 Patent.

275.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Huang '972 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Huang '972 Patent.

## COUNT 21: INFRINGEMENT OF THE HUANG '514 PATENT

276.    Paragraphs 1–275 are incorporated by reference as if fully set forth herein.

277.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '514 Patent has been or will be infringed, the Defendants have infringed the Huang '514 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

278.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '514 Patent, including at least claim 1.

279.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

280.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '514 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Huang '514 Patent, constitutes willful infringement.

281.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

282.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Huang '514 Patent.

## COUNT 22: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HUANG '514 PATENT

283.    Paragraphs 1–282 are incorporated by reference as if fully set forth herein.

284.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '514 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Huang '514 Patent, or will actively induce such activities.

285.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '514 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

286.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Huang '514 Patent, will infringe one or more claims of the Huang '514 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

287.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Huang '514 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Huang '514 Patent.

288.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Huang '514 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Huang '514 Patent.

## COUNT 23: INFRINGEMENT OF THE HUANG '085 PATENT

289.    Paragraphs 1–288 are incorporated by reference as if fully set forth herein.

290.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '085 Patent has been or will be infringed, the Defendants have infringed the Huang '085 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

291.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '085 Patent, including at least claim 1.

292.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

293.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Huang '085 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Huang '085 Patent, constitutes willful infringement.

294.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

295.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Huang '085 Patent.

## COUNT 24: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HUANG '085 PATENT

296.    Paragraphs 1–295 are incorporated by reference as if fully set forth herein.

297.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Huang '085 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Huang '085 Patent, or will actively induce such activities.

298.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Huang '085 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

299.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Huang '085 Patent, will infringe one or more claims of the Huang '085 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

300.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Huang '085 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Huang '085 Patent.

301.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Huang '085 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Huang '085 Patent.

### COUNT 25: INFRINGEMENT OF THE GUPTA '829 PATENT

302.    Paragraphs 1–301 are incorporated by reference as if fully set forth herein.

303.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '829 Patent has been or will be infringed, the Defendants have infringed the Gupta '829 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

304.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '829 Patent, including at least claim 1.

305.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

306.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '829 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gupta '829 Patent, constitutes willful infringement.

307.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

308.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gupta '829 Patent.

## COUNT 26: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GUPTA '829 PATENT

309.    Paragraphs 1–308 are incorporated by reference as if fully set forth herein.

310.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '829 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gupta '829 Patent, or will actively induce such activities.

311.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '829 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

312.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gupta '829 Patent, will infringe one or more claims of the Gupta '829 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

313.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gupta '829 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gupta '829 Patent.

314.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gupta '829 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gupta '829 Patent.

<u>**COUNT 27: INFRINGEMENT OF THE GUPTA '627 PATENT**</u>

315.    Paragraphs 1–314 are incorporated by reference as if fully set forth herein.

316.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '627 Patent has been or will be infringed, the Defendants have infringed the Gupta '627 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

317.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '627 Patent, including at least claim 6.

318.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent, including at least claim 6, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

319.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '627 Patent, including at least claim 6. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gupta '627 Patent, constitutes willful infringement.

320.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

321.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gupta '627 Patent.

## COUNT 28: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GUPTA '627 PATENT

322.    Paragraphs 1–321 are incorporated by reference as if fully set forth herein.

323.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '627 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent, including at least claim 6, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gupta '627 Patent, or will actively induce such activities.

324.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '627 Patent, including at least claim 6, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

325.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gupta '627 Patent, will infringe one or more claims of the Gupta '627 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

326.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gupta '627 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gupta '627 Patent.

327.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gupta '627 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gupta '627 Patent.

**COUNT 29: INFRINGEMENT OF THE GUPTA '156 PATENT**

328.    Paragraphs 1–327 are incorporated by reference as if fully set forth herein.

329.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '156 Patent has been or will be infringed, the Defendants have infringed the Gupta '156 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

330.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '156 Patent, including at least claim 1.

331.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '156 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

332.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '156 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gupta '156 Patent, constitutes willful infringement.

333.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gupta '156 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

334.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gupta '156 Patent.

## COUNT 30: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GUPTA '156 PATENT

335.    Paragraphs 1–334 are incorporated by reference as if fully set forth herein.

336.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '156 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '156 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

82

proposed denosumab biosimilar products before expiration of the Gupta '156 Patent, or will actively induce such activities.

337.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '156 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

338.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gupta '156 Patent, will infringe one or more claims of the Gupta '156 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

339.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gupta '156 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gupta '156 Patent.

340.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gupta '156 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gupta '156 Patent.

## COUNT 31: INFRINGEMENT OF THE GUPTA '186 PATENT

341.     Paragraphs 1–340 are incorporated by reference as if fully set forth herein.

342.     Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '186 Patent has been or will be infringed, the Defendants have infringed the Gupta '186 Patent under at least 35 U.S.C. §§ 271(a), (b), and (e).

343.     On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '186 Patent, including at least claim 1.

344.     On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '186 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

345.     On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of

Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gupta '186 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products o███ ███████████████ or active inducement thereof, despite knowledge of the Gupta '186 Patent, constitutes willful infringement.

346.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gupta '186 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

347.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gupta '186 Patent.

## COUNT 32: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GUPTA '186 PATENT

348.    Paragraphs 1–347 are incorporated by reference as if fully set forth herein.

349.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gupta '186 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '186 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(a) and (b). On information and belief, Defendants intend to and will begin to use, offer for sale, and

sell within the United States, and import into the United States, one or more of Defendants' proposed denosumab biosimilar products before expiration of the Gupta '186 Patent, or will actively induce such activities.

350.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gupta '186 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

351.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gupta '186 Patent, will infringe one or more claims of the Gupta '186 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

352.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gupta '186 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gupta '186 Patent.

353.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gupta '186 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing

Defendants from making, using, offering to sell, or selling within the United States, or importing into the United States, Defendants' denosumab biosimilar products before the expiration of the Gupta '186 Patent.

### COUNT 33: INFRINGEMENT OF THE KANG '723 PATENT

354.    Paragraphs 1–353 are incorporated by reference as if fully set forth herein.

355.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '723 Patent has been or will be infringed, the Defendants have infringed the Kang '723 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

356.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '723 Patent, including at least claim 1.

357.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

358.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from China into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants'

proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '723 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Kang '723 Patent, constitutes willful infringement.

359.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

360.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Kang '723 Patent.

## COUNT 34: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE KANG '723 PATENT

361.    Paragraphs 1–360 are incorporated by reference as if fully set forth herein.

362.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '723 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Kang '723 Patent, or will actively induce such activities.

363.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '723 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

364.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Kang '723 Patent, will infringe one or more claims of the Kang '723 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

365.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Kang '723 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Kang '723 Patent.

366.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Kang '723 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Kang '723 Patent.

## COUNT 35: INFRINGEMENT OF THE KANG '963 PATENT

367. Paragraphs 1–366 are incorporated by reference as if fully set forth herein.

368. Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '963 Patent has been or will be infringed, the Defendants have infringed the Kang '963 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

369. On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '963 Patent, including at least claim 1.

370. On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

371. On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '963 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Kang '963 Patent, constitutes willful infringement.

372.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

373.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Kang '963 Patent.

## COUNT 36: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE KANG '963 PATENT

374.    Paragraphs 1–374 are incorporated by reference as if fully set forth herein.

375.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '963 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Kang '963 Patent, or will actively induce such activities.

376. On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '963 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

377. An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Kang '963 Patent, will infringe one or more claims of the Kang '963 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

378. Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Kang '963 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Kang '963 Patent.

379. Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Kang '963 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Kang '963 Patent.

## COUNT 37: INFRINGEMENT OF THE KANG '178 PATENT

380.    Paragraphs 1–379 are incorporated by reference as if fully set forth herein.

381.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '178 Patent has been or will be infringed, the Defendants have infringed the Kang '178 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

382.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '178 Patent, including at least claim 1.

383.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

384.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Kang '178 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Kang '178 Patent, constitutes willful infringement.

385.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

386.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Kang '178 Patent.

## COUNT 38: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE KANG '178 PATENT

387.    Paragraphs 1–386 are incorporated by reference as if fully set forth herein.

388.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Kang '178 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Kang '178 Patent, or will actively induce such activities.

389.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Kang '178 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

390.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Kang '178 Patent, will infringe one or more claims of the Kang '178 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

391.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Kang '178 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Kang '178 Patent.

392.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Kang '178 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Kang '178 Patent.

## COUNT 39: INFRINGEMENT OF THE LEISKE '492 PATENT

393.    Paragraphs 1–392 are incorporated by reference as if fully set forth herein.

394.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '492 Patent has been or will be infringed, the Defendants have infringed the Leiske '492 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

395.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '492 Patent, including at least claim 1.

396.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

397.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '492 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Leiske '492 Patent, constitutes willful infringement.

398.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

399.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Leiske '492 Patent.

## COUNT 40: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE LEISKE '492 PATENT

400.    Paragraphs 1–399 are incorporated by reference as if fully set forth herein.

401.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '492 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Leiske '492 Patent, or will actively induce such activities.

402.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '492 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

403.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Leiske '492 Patent, will infringe one or more claims of the Leiske '492 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

404.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Leiske '492 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Leiske '492 Patent.

405.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Leiske '492 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Leiske '492 Patent.

## COUNT 41: INFRINGEMENT OF THE LEISKE '630 PATENT

406.    Paragraphs 1–405 are incorporated by reference as if fully set forth herein.

407.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '630 Patent has been or will be infringed, the Defendants have infringed the Leiske '630 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

408.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '630 Patent, including at least claim 1.

409.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

410.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Leiske '630 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Leiske '630 Patent, constitutes willful infringement.

411.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

412.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Leiske '630 Patent.

## COUNT 42: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE LEISKE '630 PATENT

413.    Paragraphs 1–412 are incorporated by reference as if fully set forth herein.

414.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262($l$)(2)(A) and provide missing information for Amgen to fully evaluate whether the Leiske '630 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Leiske '630 Patent, or will actively induce such activities.

415.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Leiske '630 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

416.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Leiske '630 Patent, will infringe one or more claims of the Leiske '630 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

417.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Leiske '630 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Leiske '630 Patent.

418.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Leiske '630 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Leiske '630 Patent.

## COUNT 43: INFRINGEMENT OF THE GEFROH '397 PATENT

419.    Paragraphs 1–418 are incorporated by reference as if fully set forth herein.

420.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gefroh '397 Patent has been or will be infringed, the Defendants have infringed the Gefroh '397 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

421.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gefroh '397 Patent, including at least claim 13.

422.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent, including at least claim 13, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

423.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gefroh '397 Patent, including at least claim 13. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Gefroh '397 Patent, constitutes willful infringement.

424.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

425.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Gefroh '397 Patent.

## COUNT 44: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GEFROH '397 PATENT

426.    Paragraphs 1–425 are incorporated by reference as if fully set forth herein.

427.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gefroh '397 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent, including at least claim 13, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gefroh '397 Patent, or will actively induce such activities.

428.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '397 Patent, including at least claim 13, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

429.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gefroh '397 Patent, will infringe one or more claims of the Gefroh '397 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

430.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gefroh '397 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gefroh '397 Patent.

431.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gefroh '397 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gefroh '397 Patent.

## COUNT 45: INFRINGEMENT OF THE GEFROH '404 PATENT

432.    Paragraphs 1–431 are incorporated by reference as if fully set forth herein.

433.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Gefroh '404 Patent has been or will be infringed, the Defendants have infringed the Gefroh '404 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

434.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Gefroh '404 Patent, including at least claim 14.

435.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '404 Patent, including at least claim 14, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

436.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from China into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof, constitutes

acts of infringement, either literally or under the doctrine of equivalents, of one or more claims

of the Gefroh '404 Patent, including at least claim 14. On information and belief, Defendants'

importation into, commercial manufacture, sale, offer for sale, or use within the United States of

one or more of Defendants' proposed denosumab biosimilar products, or active inducement

thereof, despite knowledge of the Gefroh '404 Patent, constitutes willful infringement.

437.    Amgen is entitled to a judgment that Defendants have infringed, either literally or

under the doctrine of equivalents, one or more claims of the Gefroh '404 Patent. Amgen has been

injured by Defendants' infringement and is entitled to damages.

438.    Amgen will be irreparably harmed if Defendants are not enjoined from the

commercial manufacture, use, offer for sale, or sale within the United States, and importation

into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not

have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from

such infringement of one or more claims of the Gefroh '404 Patent.

## COUNT 46: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE GEFROH '404 PATENT

439.    Paragraphs 1–438 are incorporated by reference as if fully set forth herein.

440.    Based on information presently available to Amgen, and in view of Defendants'

failure to comply with 42 U.S.C. § 262($l$)(2)(A) and provide missing information for Amgen to

fully evaluate whether the Gefroh '404 Patent has been or will be infringed, the Defendants have

infringed and will infringe, either literally or under the doctrine of equivalents, one or more

claims of the Gefroh '404 Patent, including at least claim 14, under at least 35 U.S.C. §§ 271(b)

and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and

sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Gefroh '404 Patent, or will actively induce such activities.

441.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Gefroh '404 Patent, including at least claim 14, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

442.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Gefroh '404 Patent, will infringe one or more claims of the Gefroh '404 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

443.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Gefroh '404 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Gefroh '404 Patent.

444.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Gefroh '404 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Gefroh '404 Patent.

## COUNT 47: INFRINGEMENT OF THE HOANG '079 PATENT

445.    Paragraphs 1–444 are incorporated by reference as if fully set forth herein.

446.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Hoang '079 Patent has been or will be infringed, the Defendants have infringed the Hoang '079 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

447.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Hoang '079 Patent, including at least claim 1.

448.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

449.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Hoang '079 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Hoang '079 Patent, constitutes willful infringement.

450.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

451.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Hoang '079 Patent.

## COUNT 48: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE HOANG '079 PATENT

452.    Paragraphs 1–451 are incorporated by reference as if fully set forth herein.

453.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Hoang '079 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Hoang '079 Patent, or will actively induce such activities.

454.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Hoang '079 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

455.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Hoang '079 Patent, will infringe one or more claims of the Hoang '079 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

456.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Hoang '079 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Hoang '079 Patent.

457.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Hoang '079 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Hoang '079 Patent.

## COUNT 49: INFRINGEMENT OF THE MORRIS '236 PATENT

458.    Paragraphs 1–457 are incorporated by reference as if fully set forth herein.

459.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '236 Patent has been or will be infringed, the Defendants have infringed the Morris '236 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

460.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '236 Patent, including at least claim 35.

461.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent, including at least claim 35, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

462.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '236 Patent, including at least claim 35. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Morris '236 Patent, constitutes willful infringement.

463.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

464.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Morris '236 Patent.

## COUNT 50: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE MORRIS '236 PATENT

465.    Paragraphs 1–465 are incorporated by reference as if fully set forth herein.

466.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '236 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent, including at least claim 35, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Morris '236 Patent, or will actively induce such activities.

467.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '236 Patent, including at least claim 35, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

468.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Morris '236 Patent, will infringe one or more claims of the Morris '236 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

469.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Morris '236 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Morris '236 Patent.

470.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Morris '236 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Morris '236 Patent.

## COUNT 51: INFRINGEMENT OF THE MORRIS '168 PATENT

471.    Paragraphs 1–470 are incorporated by reference as if fully set forth herein.

472.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '168 Patent has been or will be infringed, the Defendants have infringed the Morris '168 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

473.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '168 Patent, including at least claim 33.

474.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent, including at least claim 33, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

475.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Morris '168 Patent, including at least claim 33. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Morris '168 Patent, constitutes willful infringement.

476.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

477.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Morris '168 Patent.

## COUNT 52: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE MORRIS '168 PATENT

478.    Paragraphs 1–477 are incorporated by reference as if fully set forth herein.

479.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Morris '168 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent, including at least claim 33, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Morris '168 Patent, or will actively induce such activities.

480.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Morris '168 Patent, including at least claim 33, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

481.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Morris '168 Patent, will infringe one or more claims of the Morris '168 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

482.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Morris '168 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Morris '168 Patent.

483.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Morris '168 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Morris '168 Patent.

### COUNT 53: INFRINGEMENT OF THE PANDE '980 PATENT

484.    Paragraphs 1–483 are incorporated by reference as if fully set forth herein.

485.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '980 Patent has been or will be infringed, the Defendants have infringed the Pande '980 Patent under at least 35 U.S.C. §§ 271(b), (e) and (g).

486.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '980 Patent, including at least claim 1.

487.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

488.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '980 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Pande '980 Patent, constitutes willful infringement.

489.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

490.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Pande '980 Patent.

## COUNT 54: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE PANDE '980 PATENT

491.    Paragraphs 1–490 are incorporated by reference as if fully set forth herein.

492.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '980 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Pande '980 Patent, or will actively induce such activities.

493.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '980 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

494.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Pande '980 Patent, will infringe one or more claims of the Pande '980 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

495.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Pande '980 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Pande '980 Patent.

496.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Pande '980 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Pande '980 Patent.

<u>**COUNT 55: INFRINGEMENT OF THE PANDE '760 PATENT**</u>

497.    Paragraphs 1–496 are incorporated by reference as if fully set forth herein.

498.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '760 Patent has been or will be infringed, the Defendants have infringed the Pande '760 Patent under at least 35 U.S.C. §§ 271(b), (e) and (g).

499.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '760 Patent, including at least claim 1.

500.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

501.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Pande '760 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Pande '760 Patent, constitutes willful infringement.

502.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

503.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Pande '760 Patent.

## COUNT 56: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE PANDE '760 PATENT

504.    Paragraphs 1–503 are incorporated by reference as if fully set forth herein.

505.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Pande '760 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants'

proposed denosumab biosimilar products before expiration of the Pande '760 Patent, or will actively induce such activities.

506.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Pande '760 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

507.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Pande '760 Patent, will infringe one or more claims of the Pande '760 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. See 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

508.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Pande '760 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Pande '760 Patent.

509.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Pande '760 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Pande '760 Patent.

## COUNT 57: INFRINGEMENT OF THE TREJO '919 PATENT

510.    Paragraphs 1–509 are incorporated by reference as if fully set forth herein.

511.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '919 Patent has been or will be infringed, the Defendants have infringed the Trejo '919 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

512.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '919 Patent, including at least claim 1.

513.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

514.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '919 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Trejo '919 Patent, constitutes willful infringement.

515.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

516.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Trejo '919 Patent.

## COUNT 58: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE TREJO '919 PATENT

517.    Paragraphs 1–516 are incorporated by reference as if fully set forth herein.

518.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '919 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Trejo '919 Patent, or will actively induce such activities.

519.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '919 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

520.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Trejo '919 Patent, will infringe one or more claims of the Trejo '919 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

521.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Trejo '919 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Trejo '919 Patent.

522.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Trejo '919 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Trejo '919 Patent.

## COUNT 59: INFRINGEMENT OF THE TREJO '372 PATENT

523.     Paragraphs 1–522 are incorporated by reference as if fully set forth herein.

524.     Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '372 Patent has been or will be infringed, the Defendants have infringed the Trejo '372 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

525.     On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '372 Patent, including at least claim 1.

526.     On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

527.     On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Trejo '372 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Trejo '372 Patent, constitutes willful infringement.

528.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

529.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Trejo '372 Patent.

### COUNT 60: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE TREJO '372 PATENT

530.    Paragraphs 1–529 are incorporated by reference as if fully set forth herein.

531.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Trejo '372 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Trejo '372 Patent, or will actively induce such activities.

532.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Trejo '372 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

533.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Trejo '372 Patent, will infringe one or more claims of the Trejo '372 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

534.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Trejo '372 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Trejo '372 Patent.

535.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Trejo '372 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Trejo '372 Patent.

## COUNT 61: INFRINGEMENT OF THE WU '435 PATENT

536.    Paragraphs 1–535 are incorporated by reference as if fully set forth herein.

537.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '435 Patent has been or will be infringed, the Defendants have infringed the Wu '435 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

538.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '435 Patent, including at least claim 1.

539.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

540.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '435 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '435 Patent, constitutes willful infringement.

541.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

542.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '435 Patent.

## COUNT 62: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '435 PATENT

543.    Paragraphs 1–542 are incorporated by reference as if fully set forth herein.

544.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '435 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '435 Patent, or will actively induce such activities.

545.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '435 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

546.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '435 Patent, will infringe one or more claims of the Wu '435 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

547.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '435 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '435 Patent.

548.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '435 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '435 Patent.

<u>**COUNT 63: INFRINGEMENT OF THE WU '568 PATENT**</u>

549.    Paragraphs 1–548 are incorporated by reference as if fully set forth herein.

550.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '568 Patent has been or will be infringed, the Defendants have infringed the Wu '568 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

551.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '568 Patent, including at least claim 1.

552.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

553.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '568 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '568 Patent, constitutes willful infringement.

554.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

555.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '568 Patent.

## COUNT 64: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '568 PATENT

556.    Paragraphs 1–555 are incorporated by reference as if fully set forth herein.

557.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '568 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '568 Patent, or will actively induce such activities.

558. On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '568 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

559. An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '568 Patent, will infringe one or more claims of the Wu '568 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

560. Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '568 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '568 Patent.

561. Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '568 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '568 Patent.

## COUNT 65: INFRINGEMENT OF THE WU '595 PATENT

562.    Paragraphs 1–561 are incorporated by reference as if fully set forth herein.

563.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '595 Patent has been or will be infringed, the Defendants have infringed the Wu '595 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

564.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '595 Patent, including at least claim 1.

565.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

566.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '595 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '595 Patent, constitutes willful infringement.

567.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

568.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '595 Patent.

## COUNT 66: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '595 PATENT

569.    Paragraphs 1–568 are incorporated by reference as if fully set forth herein.

570.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '595 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '595 Patent, or will actively induce such activities.

571.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '595 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

572.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '595 Patent, will infringe one or more claims of the Wu '595 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

573.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '595 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '595 Patent.

574.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '595 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '595 Patent.

## COUNT 67: INFRINGEMENT OF THE WU '605 PATENT

575.    Paragraphs 1–574 are incorporated by reference as if fully set forth herein.

576.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '605 Patent has been or will be infringed, the Defendants have infringed the Wu '605 Patent under at least 35 U.S.C. §§ 271(b), (e), and (g).

577.    On information and belief, based on information presently available to Amgen, the submission of Defendants' BLA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or importation into the United States, of Defendants' proposed denosumab biosimilar products before the expiration of the Patents-in-Suit is an act of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '605 Patent, including at least claim 1.

578.    On information and belief, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

579.    On information and belief, based on information presently available to Amgen, including information from the FDA Dashboard pertaining to Defendants' past imports of denosumab from India and Germany into the United States, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or Defendants' active inducement thereof,

constitutes acts of infringement, either literally or under the doctrine of equivalents, of one or more claims of the Wu '605 Patent, including at least claim 1. On information and belief, Defendants' importation into, commercial manufacture, sale, offer for sale, or use within the United States of one or more of Defendants' proposed denosumab biosimilar products, or active inducement thereof, despite knowledge of the Wu '605 Patent, constitutes willful infringement.

580.    Amgen is entitled to a judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent. Amgen has been injured by Defendants' infringement and is entitled to damages.

581.    Amgen will be irreparably harmed if Defendants are not enjoined from the commercial manufacture, use, offer for sale, or sale within the United States, and importation into the United States of Defendants' proposed denosumab biosimilar products. Amgen does not have an adequate remedy at law and is entitled to injunctive relief preventing Defendants from such infringement of one or more claims of the Wu '605 Patent.

## COUNT 68: DECLARATORY JUDGMENT OF INFRINGEMENT OF THE WU '605 PATENT

582.    Paragraphs 1–581 are incorporated by reference as if fully set forth herein.

583.    Based on information presently available to Amgen, and in view of Defendants' failure to comply with 42 U.S.C. § 262(*l*)(2)(A) and provide missing information for Amgen to fully evaluate whether the Wu '605 Patent has been or will be infringed, the Defendants have infringed and will infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent, including at least claim 1, under at least 35 U.S.C. §§ 271(b) and (g). On information and belief, Defendants intend to and will begin to use, offer for sale, and sell within the United States, and import into the United States, one or more of Defendants' proposed

denosumab biosimilar products before expiration of the Wu '605 Patent, or will actively induce such activities.

584.    On information and belief, based on information presently available to Amgen, Defendants' proposed denosumab biosimilar products and manufacturing process infringe, either literally or under the doctrine of equivalents, one or more claims of the Wu '605 Patent, including at least claim 1, and the denosumab made by that process is the essential active ingredient of Defendants' proposed denosumab biosimilar products.

585.    An actual controversy has arisen and now exists between the parties concerning whether the Defendants' making, using, offering to sell, and selling within the United States, and importing into the United States, their proposed denosumab biosimilar products, before the expiration of the Wu '605 Patent, will infringe one or more claims of the Wu '605 Patent. A judicial determination of infringement is necessary and appropriate to resolve this controversy. This declaratory judgment action is authorized by, *inter alia*, the BPCIA and by the Declaratory Judgment Act. *See* 42 U.S.C. §§ 262(*l*)(2)(A), 262(*l*)(9)(B), 262(*l*)(9)(C); 28 U.S.C. §§ 2201, 2202.

586.    Amgen is entitled to a declaratory judgment that Defendants will infringe one or more claims of the Wu '605 Patent by making, using, offering to sell, or selling within the United States, or importing into the United States, their denosumab biosimilar products before the expiration of the Wu '605 Patent.

587.    Amgen will suffer irreparable injury for which damages are an inadequate remedy if Defendants are not enjoined from infringing one or more claims of the Wu '605 Patent. Amgen does not have an adequate remedy at law and seeks injunctive relief preventing Defendants from making, using, offering to sell, or selling within the United States, or importing

into the United States, Defendants' denosumab biosimilar products before the expiration of the Wu '605 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Amgen with respect to the Patents-in-Suit respectfully requests that this Court enter judgment in their favor against Defendants and grant the following relief:

A.    A judgment that Defendants have infringed, either literally or under the doctrine of equivalents, one or more claims of the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(C);

B.    Based on that judgment, a permanent injunction against the commercial manufacture, use, offer to sell, and sale within the United States, and importation into the United States, of Defendants' denosumab biosimilar products before the expiration of each of the Patents-in-Suit that are found infringed;

C.    A judgment that Defendants have infringed and/or will infringe one or more claims of each of the Patents-in-Suit by making, using, offering for sale, or selling within the United States, or importing into the United States, one or more of Defendants' denosumab biosimilar products during the term of the Patents-in-Suit;

D.    Based on that judgment, a permanent injunction against future infringement by Defendants, as well as by its officers, employees, agents, representatives, affiliates, assignees, successors, and all persons acting on behalf of, at the direction of, or in active concert with Defendants, until each of the Patents-in-Suit that are found infringed has expired;

E.    A judgment and order requiring Defendants to pay Amgen damages in an amount adequate to compensate Amgen for Defendants' infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of judgment and beyond, with accounting, as needed;

F.      A declaration that this is an exceptional case and awarding attorneys' fees and

costs pursuant to 35 U.S.C. § 285;

G.      On all counts, such other relief in law and equity as this Court may deem just,

necessary, or proper.

## DEMAND FOR A JURY TRIAL

Amgen hereby demands a jury trial on all issues so triable.

Dated: June 30, 2025


*/s/ Jack W. Pirozzolo*

Jack W. Pirozzolo (BBO# 564879)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA  02109
(617) 223-0300

OF COUNSEL:

Steven J. Horowitz (*pro hac vice forthcoming*)      David L. Anderson (*pro hac vice forthcoming*)
Richard Chen (*pro hac vice forthcoming*)            Sue Wang (*pro hac vice forthcoming*)
SIDLEY AUSTIN LLP                                    SIDLEY AUSTIN LLP
One South Dearborn                                   555 California Street
Chicago, Illinois 60603                              San Francisco, CA 94104
(312) 853-7000                                       (415) 772-1200

Jeffrey P. Kushan (*pro hac vice forthcoming*)       Samuel N. Tiu (*pro hac vice forthcoming*)
Joshua J. Fougere (*pro hac vice forthcoming*)       SIDLEY AUSTIN LLP
Lauren Katzeff (*pro hac vice forthcoming*)          555 West Fifth Street
SIDLEY AUSTIN LLP                                    Los Angeles, California 90013
1501 K Street N.W.                                   (213) 896-6000
Washington, D.C. 20005
(202) 736-8700

Michael D. Hatcher (*pro hac vice forthcoming*)
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
(214) 981-3300

Siegmund Y. Gutman (*pro hac vice forthcoming*)
David M. Hanna (*pro hac vice forthcoming*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND
POPEO, P.C.
2049 Century Park East, Suite 300
Los Angeles, CA 90067
(310) 226-7866


Wendy A. Whiteford (*pro hac vice forthcoming*)          James High (*pro hac vice forthcoming*)
Steven T. Tang (*pro hac vice forthcoming*)              AMGEN INC.
C. Nichole Gifford (*pro hac vice forthcoming*)          750 Gateway Blvd., St. 100
Alaina M. Whitt (*pro hac vice forthcoming*)             San Francisco, CA 94080
AMGEN INC.                                               (650) 244-2000
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000


*Attorneys for Amgen Inc. and*
*Amgen Manufacturing Limited LLC*